Filed 8/18/25  Marriage of Palaniyappan and Chartrand-Dumas CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

In re Marriage of MUTHATHAL PALANIYAPPAN and MAXIME CHARTRAND-DUMAS.

MUTHATHAL PALANIYAPPAN,

Plaintiff and Appellant,

v.

MAXIME CHARTRAND-DUMAS,

Defendant and Appellant.

G063006

(Super. Ct. No. 19D010105)

O P I N I O N

\* \* \*

Appeal from a judgment of the Superior Court of Orange County, Thomas J. Lo, Judge. Affirmed.

Muthathal Palanyiappan, in pro. per., for Plaintiff and Appellant.

Law Office of Alan S. Yockelson, Alan S. Yockelson and Stephen M. Vasil; Law Office of Lauren Mullee and Lauren Mullee for Defendant and Appellant.

\*       \*       \*

This appeal and cross-appeal arise from a postjudgment order in a divorce case between Maxime Chartrand-Dumas (Husband) and Muthathal Palaniyappan (Wife). The trial court found that Husband breached his fiduciary duty by exercising stock options acquired through his employer. Under the parties' marital settlement agreement (MSA), Husband had agreed to notify Wife of any exercise and to assist her in making a sound investment decision with her half of the stock options, which were under his control. Not only did Husband fail to provide Wife notice, but he then lied to her when she asked about it. Husband contends no fiduciary duty remained once the MSA assigned the options to Wife as her separate property. We conclude that Husband's fiduciary duties continued under Family Code section 2102 because the stock options remained in his possession and he agreed to notify Wife of any exercise. By failing to notify her, Husband breached his fiduciary duty. We affirm.

STATEMENT OF FACTS

The parties married on January 24, 2011, and separated on December 17, 2019. A judgment of legal separation was entered on January 29, 2020, incorporating their MSA. The MSA was self-negotiated, with both parties stating that they were self-represented in signing the MSA.

Husband was employed at Confluent, Inc., and during the marriage he was awarded stock options. The MSA awarded Wife "50 percent of Maxime's Confluent stocks" for the first 36 months of vesting and a diminishing portion in the fourth year. The MSA specified that Wife's share would be "her sole and separate property."

On January 28, 2021, the parties signed a notarized letter agreement that addressed numerous issues related to the parties' property division, including the stock options. Paragraph 13 provided: "Maxime agreed

2

to communicate all required information with regards to Confluent private stocks with Muthathal so she has all information needed to sell, buy or exercise it at a good price. This includes any knowledge or information he comes to know internally and externally about Confluent stocks, number of available shares, strike price and fair market value information, blackout periods, etc. Maxime agrees to help Muthathal make a sound decision on whether to exercise the stocks or not. Maxime will assist Muthathal with regards to exercising her shares. Maxime will let Muthathal know when he exercises his shares, and also when he is about to tender his resignation or gets a termination notice from Confluent." The agreement further stated it would "continue in effect until December 31, 2021 until all items are complete."

In May 2021, Husband exercised 15,873 Confluent incentive stock options—half of the total stock options. He did not notify Wife. Instead, on September 1, 2021, when Wife directly asked him whether he had exercised any options, he told her, "[h]aven't touched anything." Wife discovered the exercise only after contacting Confluent's equity department on November 4, 2021.

On November 7, 2022, Wife filed a request for order (RFO) alleging a breach of fiduciary duty based on Husband exercising the stock options belonging to her without notice and in violation of the January 2021 letter agreement.

In a written ruling filed June 29, 2023, the trial court found that Husband breached his fiduciary duty under Family Code sections 721 and 2102 by exercising the stock options without prior notice. The court set the matter for a future hearing "to hear from the parties on the issue of remedies for breach of fiduciary duty . . . ." Husband appealed.

## DISCUSSION

### I.

#### APPEALABILITY

We begin with the threshold issue of appealability. The ruling on June 29, 2023, resolved a key issue: it determined that Husband breached his fiduciary duties to Wife. However, the trial court expressly reserved the issue of the appropriate remedy and set the matter for a further hearing.

Because the order does not fully dispose of the relief sought by Wife, it is arguably interlocutory and nonappealable under the one final judgment rule. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754.) However, courts have discretion to treat a defective appeal as a writ petition under limited circumstances. (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366.) It is appropriate to treat an appeal as a writ where "requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings, the briefs and record included in substance the necessary elements for a proceeding for a writ of mandate, there [is] no indication the trial court would appear as a party in a writ proceeding, the appealability of the order was not clear, and all the parties urged the court to decide the issue rather than dismiss the appeal." (*Id.* at p. 1367 (citing *Olson v. Cory* (1983) 35 Cal.3d 390).)

Multiple factors support writ treatment here. The appeal has been fully briefed and the record is well developed. If we were to agree with Husband, then any future hearing regarding remedies would be unnecessary and wasteful. And there is no indication the Superior Court would appear in a writ proceeding. Although Wife urges us to dismiss the appeal, we conclude addressing the merits is a more efficient use of judicial economy.

4

Accordingly, to the extent the June 29, 2023 order is not appealable, we exercise our discretion to treat the appeal as a petition for writ of mandate, and Wife's motion to dismiss and for sanctions is denied.

## II.

## HUSBAND OWED WIFE A FIDUCIARY DUTY, WHICH HE BREACHED

"The existence and scope of a fiduciary duty is a question of law that we review de novo." (*In re Marriage of Kamgar* (2017) 18 Cal.App.5th 136, 144.) "We review the trier of fact's finding a breach occurred for substantial evidence, resolving all conflicts and drawing all reasonable inferences in favor of the decision." (*Ibid.*)

Under Family Code section 2102, each party's fiduciary duties with respect to community property extends until the time that the property is *distributed*. The fiduciary duties extend "to all activities that affect the assets and liabilities of the other party," which includes providing an "accurate and complete written disclosure of *any investment opportunity* . . . . that presents itself after the date of separation . . . ." (*Id.* subd. (a)(2), italics added.) This disclosure must be given "in sufficient time for the other spouse to make an informed decision as to whether the spouse desires to participate in the investment opportunity . . . ." (*Ibid.*)

The May 2021 exercise of incentive stock options was, by any reasonable interpretation, an investment opportunity. In such circumstances, section 2102, subdivision (a), expressly imposes the fiduciary duties set forth in section 721, subdivision (b), requiring each spouse to act with the "highest good faith and fair dealing" and prohibiting either from taking "unfair advantage" of the other. Husband's exclusive access to the Confluent account, combined with his affirmative misrepresentation that he had "[not] touched anything," violated these baseline obligations.

5

Husband takes the position that because he only exercised his half of the stock options, he did nothing that *affected* Wife's property, as that term is used in section 2102. But that argument is squarely rebutted by the text of Family Code section 2102, which applies to "all activities that affect the assets and liabilities of the other party, *including, but not limited to,* the following activities: . . . . (2) The accurate and complete written disclosure of any investment opportunity . . . ." By statute, therefore, informational disclosures do "affect" the other party's property. That duty ceases once the property in question has been *distributed*, but it is undisputed that Husband was in possession of the stock options at all relevant times. The property was divided (i.e., half of the stock options were assigned to Wife as her separate property), but not distributed. (Compare § 1100, subd. (e) [imposing fiduciary duties regarding community property until the property is *divided*] with § 2102, subd. (b) [imposing fiduciary duties after disposition of the property until *distribution*].)[1]

The parties' understanding of these duties was confirmed by the January 2021 Letter Agreement. Paragraph 13 of that agreement required him to communicate all required information about the Confluent stock, including internal company data and timing-sensitive events, with the stated purpose of helping Wife "make a sound decision on whether to exercise the

---

[1] Additionally, we are not persuaded by Husband's contention at oral argument that the value of the stock options is consistent over time, so Wife could not have benefitted from knowing he was exercising his stock options. Timing the decision to exercise stock options is the key to maximizing their value. Indeed, the "'unique value' of stock options comes from the ability of option holders to profit when the sale price of the stock exceeds the exercise price of the option." (*Shah v. Skillz Inc.* (2024) 101 Cal.App.5th 285, 288.)

stocks or not." To that end, the agreement specifically bound Husband to notify Wife of his own exercise of the options. Rather than do that, he failed to notify her and subsequently lied about it. This was a clear breach of his fiduciary duties.[2]

## III.

### THE COURT DID NOT ABUSE ITS DISCRETION IN
### DENYING THE MOTION TO QUASH

We review the trial court's ruling on a motion to quash for abuse of discretion. (*Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 359.)

After Wife filed her request for order, she apparently directed a subpoena duces tecum to Husband's employer to obtain documents related to the stock options. We say "apparently" because the subpoena is not in the record. Husband filed a motion to quash, which the court denied. Husband has appealed from that ruling, but his entire argument is premised on his conclusion that no fiduciary duty existed: if no fiduciary duty existed, then Wife has no right to his employment documents. However, as discussed above, we reject that premise. Because the trial court correctly found a continuing duty and resulting breach, it did not abuse its discretion in concluding that Wife was entitled to discovery of documents related to the stock options.

---

[2] The trial court declined to address whether the Letter Agreement was an enforceable contract, concluding that Husband violated his statutory fiduciary duties. We likewise decline to address the enforceability issue and instead cite the letter solely to elucidate the parties' own understanding of their duties.

## IV.

### THE CROSS-APPEAL LACKS MERIT

Wife cross-appealed from the court's order, and her respondent's brief purports to advance arguments in support of the cross-appeal. However, her arguments consist principally of a list of grievances regarding Husband's conduct, and they fail to advance any claim of error by the trial court. Having failed to advance any claims of error, we decline to afford Wife any relief on her cross-appeal.

### DISPOSITION

The order of June 29, 2023, is affirmed. To the extent we have treated Husband's appeal as a writ petition, the petition is denied. Palaniyappan shall recover her costs incurred on appeal.[3]

SANCHEZ, ACTING P. J.

WE CONCUR:

DELANEY, J.

SCOTT, J.

---

[3] Wife filed two motions to augment the record, one on June 13, 2024, and one on July 1, 2024. In her June 13 motion, she sought to augment the record with various pleadings, some of which post-date the court's ruling in this case. That motion is granted with regard to items 2, 3, 4, 5 (5/16/23 only), and 9 (these are the filings that pre-date the court's ruling), and the remainder of the motion is denied. In her July 1 motion, she sought to augment the record with documents that she purportedly received in connection with her subpoena to Confluent. That motion is denied in its entirety, as those documents were not before the trial court at the time of its ruling.

8